Hugh R. GANTT and Sarah G. Gantt, Appellants,

v.

UNITED STATES of America, Appellee.

No. 75–1188.

United States Court of Appeals, Fourth Circuit.

Argued July 10, 1975.

Decided Sept. 26, 1975.

James A. Newell and Robert M. Mussellman, Charlottesville, Va., for appellant.

Joseph M. McManus, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, Attys., Tax Div., U. S. Dept. of Justice, and Leigh B. Hanes, Jr., U. S. Atty., on brief), for appellee.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

The taxpayer, Hugh R. Gantt,[1] instituted an action in the district court seeking the refund of additional income taxes assessed against him as a result of the disallowance of a business bad debt deduction for the tax year 1968. The case was tried to a jury which returned a verdict adverse to the taxpayer and judgment was entered in favor of the Government. The taxpayer has appealed.

The relevant facts may be summarized as follows: Since 1964 the taxpayer has organized and developed a number of corporations engaged in the business of employment placement, all of which operated under a franchise granted by a nationally known employment franchising agency. Each of the corporations was an entity separately capitalized and operated by its own general manager. Gantt rendered overall management advice to the corporations for which he received salaries and fees based on each corporation's ability to pay. Only four of the corporations paid salaries and fees to the taxpayer in 1968.

Owensboro Consultants, Inc., was one of the corporations established by the taxpayer to conduct his employment placement business. It was established in 1966 with a paid in capital of $3,000, seventy-five per cent of which was contributed by the taxpayer. At the time of its incorporation, Owensboro obtained

---

1. We refer to Hugh R. Gantt as the taxpayer since Sarah G. Gantt was named as a party solely because she signed the joint income tax returns.

a $12,000 loan from a local bank for the purpose of making it operational. The bank made the loan to Owensboro only because the taxpayer in his individual capacity guaranteed its repayment. During its two years of operation Owensboro was never sufficiently profitable to pay any salary or management fee to the taxpayer and finally, in 1968, the business was closed. The taxpayer paid the loan which he had guaranteed on the corporation's behalf and claimed the net amount so paid as a business bad debt deduction on his federal income tax return for 1968. It is this deduction which is in issue.

■ Section 166(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 166(a), provides for the deduction of bad debts which become worthless during the taxable year, but in the case of an individual this deduction is allowed as an offset against ordinary income only if the debt is a "business" debt, Section 166(d)(1). The Treasury Regulations interpreting Section 166(d)[2] require that a taxpayer claiming a "business" bad debt allowance must establish (1) that he is engaged in a trade or business and (2) that the bad debt loss was proximately related to such trade or business. The "proximate" relationship between the bad debt and a taxpayer's trade or business was explained in *United States v. Generes,* 405 U.S. 93, 103, 92 S.Ct. 827, 833, 31 L.Ed.2d 62 (1972):

> "We conclude that in determining whether a bad debt has a 'proximate' relation to the taxpayer's trade or business, as the Regulations specify, and thus qualifies as a business bad debt, the proper measure is that of dominant motivation, and that only significant motivation is not sufficient."

The district judge charged the jury under the rationale of *Generes* and submitted the following special interrogatory: "Was Mr. Gantt's dominant and primary motive for guarantee and payment of the bank loan to protect his status as an employee of Owensboro Consultants, Inc.?" After deliberating for some time the jury returned to the courtroom and asked the judge to explain which of the litigants would prevail on an affirmative or a negative answer to the question posited to it. The court explained the significance of the alternative answers to the jury which then retired and a few minutes later returned with the answer "No" to the interrogatory.

■ The taxpayer does not challenge the district court's charge to the jury on this issue, but contends that the evidence that Gantt's dominant motivation to protect his employment status was so strong that he was entitled to judgment as a matter of law. We cannot agree with the taxpayer on this point for our review of the record discloses ample support for the jury's answer to the special interrogatory, and it is clear that reasonable men might well reach different conclusions on this issue. "Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue." *Commissioner of Internal Revenue v. Duberstein,* 363 U.S. 278, 290–291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960).

■ The taxpayer also contends that the district court erred in refusing to charge the jury that it might find that Gantt was engaged in the business of promoting, organizing and dealing in corporations, and that the guarantee of the bank loan was dominantly motivated by his endeavors in this business. We find the answer to this contention in *Whipple v. Commissioner of Internal Revenue,* 373 U.S. 193, 202–203, 83 S.Ct. 1168, 1174, 10 L.Ed.2d 228 (1963).

> "If full-time service to one corporation does not alone amount to a trade or business, which it does not, it is difficult to understand how the same service to many corporations would suffice. To be sure, the presence of more than one corporation might lend support to a finding that the taxpayer

**2.** Treasury Regulations on Income Tax, 26 C.F.R. § 1.166–5(b).

was engaged in a regular course of promoting corporations for a fee or commission * * * or for a *profit* on their sale * * *. On the other hand, since the Tax Court found, and the petitioner *does* not dispute, that there was no intention here of developing the corporations as going businesses for sale to customers in the ordinary course, the case before us inexorably rests upon the claim that one who actively engages in serving his own corporations for the purpose of creating future income through those enterprises is in a trade or business. That argument is untenable * * * and we reject it. Absent substantial additional evidence, furnishing management and other services to corporations for a reward not different from that flowing to an *investor* in those corporations is not a trade or business." (Emphasis added.) (Citations and footnotes omitted).

In the present case, as in *Whipple,* there is nothing to suggest that the taxpayer earned any fees or commissions developing corporations for third parties nor does the record show that it was the purpose of the taxpayer to sell or deal in any of his corporations.

Finally, the taxpayer urges that he should have a new trial based upon the confusion of the jury or the abuse of its powers. The basis for this complaint is the jury's inquiry directed to the trial judge shortly before it reached its verdict on the interrogatory. We cannot agree with the taxpayer's interpretation of the colloquy between the court and jury. We think it is reasonable to assume that the jury, out of an abundance of caution, was merely seeking certitude relative to the practical result of its answer to the interrogatory. Assuredly, there was no abuse of discretion by the district judge in denying the motion for a new trial on this point.

Finding no error, the judgment of the district court is affirmed.

*Affirmed.*