M. Seth HORNE and Maurine D. Horne, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 73–2349.

United States Court of Appeals, Ninth Circuit.

Sept. 30, 1975.

---

Hubert E. Kelly (argued), Kelly & Corbin, Phoenix, Ariz., for petitioners.

Elmer J. Kelsey, Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent.

## OPINION

Before CHAMBERS, Circuit Judge, BALDWIN,* Judge of the Court of Customs and Patent Appeals, and WALLACE, Circuit Judge.

CHAMBERS, Circuit Judge:

The issue in this case is whether payments of approximately $300,000 made by taxpayer M. Seth Horne as indemnitor in connection with obligations of corporations in which he owned a substantial interest are deductible as ordinary losses. Horne was the principal partner in a real estate development firm which owned all the outstanding shares of James Stewart and Co., Inc. (COINC). COINC had two wholly-owned subsidiaries, James Stewart Corporation (CORP) and James Stewart Company (CO). All three corporations were engaged in construction and general contracting work in which it was necessary for them to post performance bonds as a condition of obtaining the contract. The bonds were obtained from New Amsterdam Casualty Company (NA). Each corporation agreed to indemnify NA against losses it incurred as surety for the other two.

In 1960, all three corporations were in financial trouble and NA was informed that CO would not be able to complete its existing contracts and that COINC and CORP lacked sufficient funds to perform their obligations as indemnitors. NA estimated its liability exposure at this time to be one million to one and a half million dollars, and requested that Horne and his partners agree to assume personal indemnity obligations. Horne was willing but his partners refused. Following this disagreement, the partnership was dissolved and the corporations were reorganized. The assets of COINC and CORP were transferred to CO; Horne received all the stock of CO in exchange for his shares in COINC; and COINC and CORP became inactive.

Contemporaneously with the reorganization, Horne agreed with NA that he and CO would be jointly and severally liable for any amounts expended by NA in connection with eight contracts previously entered into by CO, any liability incurred by CO under the earlier cross-

* The Honorable Phillip B. Baldwin, Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

indemnity agreements, and interest. NA agreed to release COINC and CORP from their cross-indemnity agreements, except as to specified contracts.

During 1966 through 1968, Horne paid NA approximately $600,000 under the indemnity agreement and recouped less than half of this amount from CO. At all times during this period, CO and its successor corporation had a net worth of over $600,000; by 1971 its net worth was about $5 million. On his income tax returns for 1966, 1967, and 1968, Horne treated one-half of his indemnity payments as ordinary losses. (The other half was treated as loans to CO.) In the tax court, Horne argued these losses were fully deductible from ordinary income under Int.Rev.Code of 1954, § 165(c) as losses incurred in a trade or business or under sections 162 or 212 as ordinary and necessary expenses incurred in a trade or business or for the production of income. The Commissioner argued they should be deductible only as nonbusiness bad debts under Int.Rev. Code of 1954, § 166(d). As such, they would be treated as short term capital losses and be deductible only in the taxable year in which they became worthless. Id. § 166(d)(1)(B).[1] The tax court accepted the Commissioner's view that bad debt treatment was appropriate and concluded that inasmuch as CO was financially able to repay Horne during the relevant years, the debts were not worthless and no deduction was permitted. M. Seth Horne, 59 T.C. 319 (1972). We affirm.

The Supreme Court, interpreting provisions of the 1939 Internal Revenue Code similar to section 166, has held that payments made by a shareholder in discharge of his obligation as guarantor of notes issued by his corporation were deductible only as bad debts. *Putnam v. Commissioner*, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956). In *United States v. Hoffman*, 423 F.2d 1217 (9th Cir. 1970), we held that section 166 covers payments by an indemnitor as well. Horne seeks to distinguish these authorities by arguing that the essence of the Putnam rule is that the taxpayer as guarantor acquired upon payment a claim against the corporation by subrogation. This claim was the "debt" that became worthless. Arguing that under the law of Arizona, where the indemnity agreements presumably were entered into, an indemnitor has no right to subrogation, at least where as here he is not a party to the original transaction between principal debtor and surety, Horne contends that without a remedy over against the corporation there is no "debt" to render section 166 applicable.

We think this argument misunderstands the operation of the statutory scheme. The loss covered by section 166(d) is "the loss *resulting from* [the worthlessness of a nonbusiness debt]" (emphasis added); this language, we believe, includes not only any loss sustained by the obligee of the debt but also any loss sustained by a third party, whether acting as surety, guarantor, or indemnitor. Thus, the section is triggered by the worthlessness of the principal debt, and no independent debt between principal debtor and the third party, created by subrogation, is necessary.

As Horne points out, the Supreme Court in Putnam did state that the guar-

---

1. Int.Rev.Code of 1954, § 166(d) provides:

   (d) Nonbusiness debts.—
   (1) General rules.—In the case of a taxpayer other than a corporation—
   (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
   (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.

   (2) Nonbusiness debt defined.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
   (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
   (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

antor would have a remedy over against the maker of the notes, but we do not read this discussion as essential to its opinion.[2] The purpose of section 166(d), as seen by the Court in Putnam,[3] was to assure capital loss treatment to all non-business investments, whether in the form of loans or of stock. Under Horne's view, the taxpayer may circumvent this policy, as well as the general requirement of section 166 that no deduction is to be allowed unless the principal debt is in fact worthless, by skillfully drafting his undertaking as a promise to indemnify or any other form of obligation which, under the law of the particular state involved, gives him no remedy over against the principal debtor. Since, ordinarily, no payment of indemnity will be required unless the borrower is unable to pay the principal debt, the availability of such a remedy against the borrower is likely to be a matter of academic interest only. See *Stratmore v. United States,* 420 F.2d 461, 465 (3d Cir. 1970), cert. denied, 398 U.S. 951, 90 S.Ct. 1870, 26 L.Ed.2d 291 (1970). No reason is advanced why Congress would have intended tax consequences to flow from the mere existence of a right of such doubtful economic significance.

■ Our conclusion that payments under obligations of guaranty and indemnity are to be treated the same is corroborated by section 166(f).[4] That section, inapplicable in this case because it is limited to noncorporate obligations, provides that any payments by a taxpayer in discharge of his obligation as "guarantor, endorser, or indemnitor," where the proceeds of the original obligations were used in borrower's trade or business, are to be treated as a debt becoming worthless within the taxable year in which the payment is made. No distinction on the basis of the existence of a remedy over against the borrower is made.[5]

■ Because of our conclusion that section 166 covers the indemnity payments involved here, deductibility under the sections asserted by Horne is precluded.[6] Thus, Horne's payments are deductible only if the underlying obligations of his corporation were worthless at the time the payments were made. Cf. Int.Rev.Code of 1954, § 166(f). In view of the tax court's determination that CO possessed the resources to reimburse Horne during the period, we must conclude the obligations were not worthless and therefore no deduction is permitted.

The decision of the tax court is affirmed.

---

**2.** Cf. Bert M. *Martin,* 52 T.C. 140, 144–47 (1969), aff'd, 424 F.2d 1368 (9th Cir. 1970). But see *id.* at 147 (concurring opinion).

**3.** 352 U.S. at 91–93, 77 S.Ct. 175. But see B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, ¶ 4.09, at 4–35 n. 72 (3d ed. 1971).

**4.** Int.Rev.Code of 1954, § 166(f), provides:

(f) Guarantor of certain noncorporate obligations.—A payment by the taxpayer (other than a corporation) in discharge of part or all of his obligation as a guarantor, endorser, or indemnitor of a noncorporate obligation the proceeds of which were used in the trade or business of the borrower shall be treated as a debt becoming worthless within such taxable year for purposes of this section (except that subsection (d) shall not apply), but only if the obligation of the borrower to the person to whom such payment was made was worthless (without regard to such guaranty, endorsement, or indemnity) at the time of such payment.

**5.** *In discussing section 166(f), the Senate Committee Report on the 1954 Code states:*

The term "guarantor, endorser, or indemnitor," includes not only those persons having collateral obligations as guarantors or endorsers but also those persons having direct obligations as indemnitors. S.Rep.No. 166, 83d Cong., 2d Sess. 200 (1954), U.S. Code Cong. & Admin.News, 1954, p. 4835.

**6.** *Putnam v. Commissioner,* 352 U.S. 82, 87, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956); *Spring City Foundry Co. v. Commissioner,* 292 U.S. 182, 189, 54 S.Ct. 644, 78 L.Ed. 1200 (1934).