HENRY J. BENAK AND MARGARET BENAK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 866–79.     Filed December 7, 1981.

*Lester M. Ponder* and *Catherine L. Bridge*, for the petitioners.
*Richard E. Trogolo*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined a deficiency of $25,509.03 in the petitioners' Federal income tax for 1974.

---

After a concession by the petitioners, the issues for decision are: (1) Whether the petitioners may deduct, as a business bad debt, an amount paid in satisfaction of their obligation as guarantors of a loan; and (2) whether the petitioners may deduct the amount of their investment in a corporation as a loss on section 1244 stock.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Henry J. and Margaret Benak, husband and wife, resided in Indianapolis, Ind., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1974 with the Internal Revenue Service, Indianapolis, Ind. Mr. Benak will sometimes be referred to as the petitioner.

In 1957, the petitioner and another person established B & G Quality Tool and Die, Inc. (B & G), a corporation organized under the laws of the State of Indiana. B & G is in the business of manufacturing dies, molds, and special machines primarily related to the automotive industry. In 1974, B & G had approximately 40 employees. The petitioner was a 50-percent stockholder and vice president of B & G; he supervised the day-to-day manufacturing operation at the plant and worked about 55 hours a week doing so. The petitioner received $45,400 in salary from B & G in 1974. The petitioners were also 50-percent stockholders in Quality Investment Co., Inc., an Indiana corporation, which owned and leased the physical plant to B & G.

On June 23, 1972, Scottie Shoppes of Illinois, Inc. (Scottie), was incorporated in the State of Indiana. On July 1, 1972, at its first meeting, the board of directors of Scottie resolved to issue its stock in accordance with a plan that would qualify such stock under section 1244 of the Internal Revenue Code of 1954.[1] On October 4, 1972, the petitioners purchased one-third of the shares of Scottie, or 15 shares, for $15,000. During 1972, Scottie operated a fast-food franchise, leasing stores in Aurora

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during 1974.

and Joliet, Ill. In deciding to invest in Scottie, the petitioners relied on the experience of John Hulse, another stockholder who had experience in operating fast-food franchises.

On December 1, 1972, there was a special meeting of the board of directors of Scottie to discuss the financial status of the corporation and the redemption of some of its stock. At such meeting, the board resolved to redeem the stock of the petitioners and Mr. Hulse at the rate of $1,000 per share. The petitioners' shares were canceled, and in payment for such shares, they received a promissory note in the amount of $15,000 bearing interest at the rate of 8 percent. Such note was due 1 year after demand.

On August 24, 1973, Scottie borrowed $100,000 from Citizens Banking Co. of Anderson, Ind. (CBC). This loan was evidenced by a promissory note, bearing interest at the rate of 8 percent. Such note required repayment of the principal, together with accrued interest thereon, in monthly installments of $2,027.70 each, commencing on September 24, 1973. The petitioners and others guaranteed payment of such note. The purpose of the loan was to secure additional operating capital for Scottie.

In accordance with the note, Scottie made regular payments to CBC on a monthly basis starting on September 25, 1973. However, by the fall of 1974, Scottie became delinquent in its payments, making them only in September and December. It did make one additional payment of $1,127.84 in January 1975. CBC advised the guarantors that Scottie was delinquent on the loan, and the guarantors sought an extension of it. However, the extension was not granted, and on March 15, 1975, the remaining balance on the loan, $84,518.04, was paid by the guarantors. The petitioners paid $28,172.68 on that date in satisfaction of their share of the obligation under the guaranty. The petitioners never received any payment from Scottie with respect to the $15,000 promissory note or with respect to their payment under the guaranty.

On their 1974 return, the petitioners reported a total of $8,855.16 of interest income. All of such interest, except for $57.82, was derived from Treasury bills and CBC. On such return, they deducted a total of $43,172.68 based on the worthlessness of the $15,000 Scottie note and their payment of the guaranty to CBC. In his notice of deficiency, the Commissioner determined that the guaranty payment was not allow-

able as a business bad debt in 1974, but was allowable as a capital loss in 1975, and he determined that the $15,000 loss attributable to the Scottie note was not a small business loss in 1974, but was a capital loss due to worthlessness in 1975.

On January 3, 1980, the petitioners filed an amended return for 1975, claiming ordinary loss deductions for the guaranty payment and the $15,000 note from Scottie.

## OPINION

The first issue to be decided is whether the petitioners may deduct in 1974, as a business bad debt, the amount of $28,172.68 paid in 1975 in satisfaction of their share of the guaranty on the CBC loan. Section 166(a)(1) allows a deduction for "any debt which becomes worthless within the taxable year." However, section 166(d)(1) provides that a nonbusiness debt held by an individual is not deductible under section 166(a), but that if a nonbusiness debt becomes worthless, the loss is treated as a short-term capital loss. Section 166(d)(2) defines a nonbusiness debt as a debt other than:

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

The petitioners maintain that their payment on the guaranty should be treated as a business bad debt because they were in the business of making investments in other small businesses and because they made the payment to protect the business reputation of B & G and its position in the community.

To distinguish a business from a nonbusiness debt, the Supreme Court in *United States v. Generes*, 405 U.S. 93, 103 (1972), held that the test is what the taxpayer's dominant motivation was in undertaking the obligation. See also *Shinefeld v. Commissioner*, 65 T.C. 1092, 1097 (1976). To be entitled to treat the guaranty payment as a business bad debt, the petitioners have the burden of proving that their dominant motivation for entering into such arrangement was for business purposes, rather than to protect their investment in Scottie. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933).

It is clear that Mr. Benak's principal business was as an employee of B & G: He was the vice president of that company;

he supervised its manufacturing operations; and he spent most of his working time in that activity. We recognize that a person may be in more than one trade or business, but Mr. Benak has failed to prove that he was in an investment business and that he entered into the guaranty as a part of such business. Cf. *Higgins v. Commissioner*, 312 U.S. 212 (1941); *Smith v. Commissioner*, 60 T.C. 316 (1973); sec. 1.166–8, Income Tax Regs. He testified that he had made loans to six other small businesses, but he was unable to substantiate any of such loans. Moreover, the petitioners' tax return for 1974 failed to reflect that they were deriving any income from any such investments. The petitioners have utterly failed to prove that their dominant motivation for guaranteeing the CBC loan to Scottie was a part of carrying on an investment business. See *Gustin v. Commissioner*, 412 F.2d 803 (6th Cir. 1969), affg. per curiam a Memorandum Opinion of this Court; *Scifo v. Commissioner*, 68 T.C. 714 (1977); *Betts v. Commissioner*, 62 T.C. 536 (1974).

Mr. Benak was both an employee and a stockholder of B & G, and he testified that he entered into the Scottie guaranty agreement to protect B & G's reputation in the community. For the petitioners to be able to treat their payment on the guaranty as a business bad debt, it would be necessary to show that their dominant motivation in guaranteeing the Scottie loan was proximately related to Mr. Benak's status as an employee of B & G rather than as an investor in such corporation. *United States v. Generes, supra.* The fact that a loan or payment is made in furtherance of an employer's trade or business does not mean that it is proximately related to that of the employee. *Shinefeld v. Commissioner, supra; Imel v. Commissioner*, 61 T.C. 318 (1973); cf. *Deputy v. du Pont*, 308 U.S. 488 (1940). There is absolutely no evidence showing that the petitioners entered into the guaranty arrangement in the interest of his employment with B & G, and the testimony of Mr. Benak that he agreed to make the guaranty payment to protect the goodwill of B & G was vague and conclusory—there was no specific information provided as to how his employment with B & G would be harmed if the petitioners failed to fulfill their obligation under the guaranty. In *Whipple v. Commissioner*, 373 U.S. 193, 201 (1963), the Court observed that section 166 "was designed to make full deductibility of a

bad debt turn upon its proximate connection with activities which the tax laws recognized as a trade or business, a concept which falls far short of reaching every income or profit making activity." As the petitioners have failed to prove their dominant motivation in guaranteeing the Scottie loan was for business reasons, we hold that their payment on the guaranty is not deductible as a business bad debt. See *Shinefeld v. Commissioner, supra*; see also *Gantt v. United States*, 528 F.2d 354 (4th Cir. 1975).

Furthermore, it is equally clear that the petitioners did not sustain a loss in 1974 as a result of their guaranty payment. It has been held that a loss sustained by a guarantor unable to recover from a debtor is a loss from a bad debt to which the guarantor becomes subrogated upon the discharge of his liability as a guarantor. *Putnam v. Commissioner*, 352 U.S. 82 (1956); sec. 1.166–8, Income Tax Regs. As a guaranty is a secondary and not a primary obligation, no debt runs to the guarantor from the principal debtor until the guarantor makes payment on the guaranty. *Horne v. Commissioner*, 59 T.C. 319, 334 (1972), affd. 523 F.2d 1363 (9th Cir. 1975); see L. Simpson, Handbook on the Law of Suretyship, sec. 47 (1950). Since no payment was made by the petitioners to CBC in satisfaction of their obligation on the guaranty until March 15, 1975, they are not allowed a deduction for such payment in 1974.

The petitioners argue that they should be allowed a deduction in 1974 because Scottie became insolvent in that year. However, Scottie did manage to make at least one more payment on the loan in 1975, and in any event, since the petitioners' right to a deduction for a bad debt did not arise until they in fact made payment on the guaranty, we hold that they are not entitled to any deduction for a nonbusiness bad debt until 1975 as a result of their guaranty payment.

The remaining issue to be decided is whether the petitioners are entitled to deduct in 1974 their investment in Scottie as a loss on section 1244 stock. Ordinarily, when an investment in corporate stock becomes worthless, the resulting loss is deductible as a capital loss under section 165(g). However, section 1244(a) provides that a loss on section 1244 stock may be treated as an ordinary loss, but to be entitled to such a loss, the requirements of that section must be satisfied. Section

1244(c)(1) declares that only common stock may constitute section 1244 stock. Section 1.1244(c)–1(b), Income Tax Regs., elaborates upon such requirement and states in part:

(b) *Common stock.* Only common stock, either voting or nonvoting, in a domestic corporation may qualify as section 1244 stock. For purposes of section 1244, neither securities of the corporation convertible into common stock nor common stock convertible into other securities of the corporation are treated as common stock. * * *

In 1974, the petitioners no longer held common stock in Scottie.

The petitioners argue that the note which Scottie issued to them, in effect, represented a recapitalization of Scottie and that such note continued to represent an equity interest in Scottie since Scottie's ability to pay off the note depended upon its profitability. A recapitalization has been defined as a "reshuffling of * * * [the] capital structure within the framework of an existing corporation." *Helvering v. Southwest Consolidated Corp.*, 315 U.S. 194, 202 (1942). However, when the petitioners surrendered their stock and received the Scottie note in payment for the stock, the arrangement was more than a mere recapitalization—the petitioners were no longer stockholders of Scottie, but they became creditors of it. After the redemption, they no longer held common stock in Scottie, and accordingly, they no longer satisfied the requirement of section 1244(c)(1). It may be that their ability to collect on the note depended upon the success of Scottie; nevertheless, the note made them creditors of the corporation and gave them rights different from those of a stockholder.

Moreover, the petitioners have also failed to prove that they satisfied the other requirements of section 1244. For stock to qualify under section 1244, section 1244(c)(1)(E)[2] provided that the corporation must have:

derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities * * *

See sec. 1.1244(c)–1(e), Income Tax Regs.; *Davenport v. Commissioner*, 70 T.C. 922 (1978). In their testimony and in the

---

[2]Sec. 1244(c)(1) has been revised, and subpar. (C) thereof now contains provisions similar to those that were in subpar. (E). Rev. Act of 1978, Pub. L. 95–600, sec. 345(c), 92 Stat. 2845.

briefs, the petitioners included some general descriptions of the operations of Scottie, but there was absolutely no evidence to show that the gross receipts requirement of section 1244(c)(1)(E) was satisfied. See *Role v. Commissioner,* 70 T.C. 341 (1978); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 4.11 (3d ed. 1971). Section 1244 is designed to provide a tax benefit to a rather limited group of taxpayers. As such, qualification for those benefits requires strict compliance with section 1244 and the regulations thereunder. See *Morgan v. Commissioner,* 46 T.C. 878, 889 (1966); see also *Smyers v. Commissioner,* 57 T.C. 189 (1971). The petitioners have failed to meet their burden of proof; hence, we hold that their loss is not allowable under section 1244.

Nor are the petitioners entitled to deduct the Scottie note as a business bad debt in 1974. In the first place, they have offered no evidence to establish that their dominant reason for contributing the funds to Scottie was to further any business purpose; on the contrary, the record shows clearly that their purpose was to make an investment in that corporation. *United States v. Generes, supra.* Consequently, the Scottie note represented a nonbusiness debt within the meaning of section 166(d)(2), and any loss with respect to it must be treated as a short-term capital loss.

In addition, the petitioners have failed to prove that the note became worthless in 1974. Although Scottie was experiencing financial difficulties during that year, it continued to make some payments on its obligation to CBC even in 1975. Though these payments became irregular, the petitioners introduced no evidence showing that Scottie became insolvent in 1974. Compare *Steadman v. Commissioner,* 50 T.C. 369 (1968), affd. 424 F.2d 1 (6th Cir. 1970), cert. denied 400 U.S. 869 (1970). Moreover, the petitioners failed to show that they made any demand for payment on their note from Scottie in 1974, or that the making of such a demand would have been a meaningless ritual. Cf. *United States v. S. S. White Dental Mfg. Co.,* 274 U.S. 398 (1927). Thus, the Commissioner was clearly acting properly in determining that the loss should be treated as a short-term capital loss in 1975.

*Decision will be entered for the respondent.*