EDWARD J. HOLLAND, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holland v. Commissioner
Docket No. 19873-80.
United States Tax Court
T.C. Memo 1982-428; 1982 Tax Ct. Memo LEXIS 313; 44 T.C.M. (CCH) 611; T.C.M. (RIA) 82428; July 28, 1982. *313 Held: Petitioner is not entitled to a bad debt deduction in 1973 because the debt was a nonbusiness debt and he did not establish that it became wholly worthless in 1973. Held further: Petitioner has established his right to deduct interest paid on a real estate mortgage but has failed to substantiate his claimed automobile interest expense deduction. Frederick A. Patmon and Hallison H. Young, for the petitioner. Danny M. Carr, for the respondent. *314 WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency of $7,776.11 in petitioner's Federal income tax for 1973. The issues for determination are (1) whether petitioner is entitled to a business bad debt deduction with respect to an amount he paid as guarantor of a debt of his wholly owned corporation, and (2) whether petitioner is entitled to interest expense deductions with respect to amounts he claimed as interest on an automobile loan and a real estate mortgage. [1]
Some of the facts have been stipulated and are so found. Petitioner resided in Detroit, Michigan, at the time he filed the petition in this case. He filed an individual Federal income tax return for the year 1973. Bad Debt Deduction
Petitioner is a song writer and record producer. On March 21, 1968, Hot *315 Wax Records, Inc. (hereinafter the Corporation), was formed to engage in the business of manufacturing phonograph records. From its inception until its dissolution on May 15, 1976, petitioner was the sole shareholder and president of the Corporation. He was also the chief executive producer and artist and repertoire director for the Corporation, in which capacity he organized the artists, organized the songs, and directed the producers and song writers. Although the Corporation approved a salary for petitioner in each year, the purported salary was never paid but was simply accrued on the corporate books as amounts owed to petitioner. On or about February 2, 1973, the Corporation executed a 180-day promissory note in the amount of $48,761.51 to the City National Bank of Detroit (hereinafter the Bank), which was renewed on or about August 1, 1973, by execution of a new promissory note to the Bank. This new note was secured by a personal certificate of deposit petitioner had with the Bank. On or about December 6, 1973, the Bank cashed petitioner's certificate of deposit and paid the $48,761.51 principal amount of the note plus the accrued interest of $1,290.15, for a total payment *316 of $50,051.66. When the Bank foreclosed on petitioner's certificate of deposit, by virtue of subrogation a debt arose between the Corporation and petitioner. [2] However, petitioner never attempted to have the Corporation pay this debt. As the Corporation's president and sole shareholder, he believed the Corporation did not have sufficient cash to pay this debt. On its corporate income tax return, Form 1120, for its taxable year ending April 30, 1973, the Corporation showed net liabilities exceeding net assets by $1,152,328. Nevertheless, the Corporation continued in business until May 1976. It had gross income in these years, including $176,725 of gross income in 1973, but operated at a loss in each year. On his individual income tax return for 1973, petitioner deducted $50,051 as a business bad debt loss. The deduction was disallowed on audit. Section 166(a)[3] generally allows *317 a deduction for bad debts that become wholly or partially worthless in the year. However, for a noncorporate taxpayer, a nonbusiness bad debt is to be considered as a capital loss in the year the debt becomes totally worthless. Section 166(d)(1); section 1.166-5(a), Income Tax Regs. Here, we must determine first whether the debt of the Corporation to petitioner, which was created when the Bank foreclosed on petitioner's certificate of deposit, was a nonbusiness bad debt, and if we so find, we must then determine whether the debt became wholly worthless in 1973. Whether a particular debt is a business or nonbusiness debt is to be determined from an examination of the relationship of the loan to the taxpayer's trade or business. Section 1.166-5(b), Income Tax Regs. When the taxpayer is both a shareholder and an employee of the debtor corporation, the test to be applied is whether the taxpayer's dominant motivation in advancing funds *318 to the corporation was to protect his employment rather than his investment in the corporation. United States v. Generes,405 U.S. 93, 100-105 (1972); Putoma Corp. v. Commissioner,66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979). Petitioner contends that his dominant motivation in giving the certificate of deposit as collateral was to protect his employment status and right to compensation from the Corporation. However, the Corporation had never paid petitioner any significant portion of the salary accrued on its books, and given its dire financial situation when he made the guaranty in August 1973, [4] there was no reasonable prospect of petitioner receiving any salary in the foreseeable future. A claim that a loan was motivated by a hope of future salary payments is much less plausible than a claim that it was to protect a present salary. See Putoma Corp. v. Commissioner,66 T.C. at 674. Furthermore, from its creation in 1968 through 1973, petitioner had from time to time advanced money to the Corporation, so that by 1973 the total amount advanced, either as unsecured loans or as contributions to *319 capital, was near $100,000. The magnitude of this investment in the Corporation strongly indicates that the guaranty given by petitioner in August 1973 was motivated by his desire to protect his existing investment rather than by any desire to protect his possibility of future salaries from the Corporation. See United States v. Generes,supra at 106-107; Smith v. Commissioner,60 T.C. 316, 319-320 (1973). We also note that on petitioner's income tax return for 1973 he reported $28,846 as compensation from another employer, thus indicating that he was not in extreme need of protecting his employment status with the Corporation. [5]
*320 On the basis of all these facts, we find that the debt from the Corporation to petitioner was a nonbusiness bad debt. There remains to be determined whether this nonbusiness bad debt became wholly worthless in 1973. As the Court pointed out in Dustin v. Commissioner,53 T.C. 491, 501-502 (1969), affd. 467 F.2d 47 (9th Cir. 1972), petitioner must show that the debt had by December 31, 1973: * * * a lack of potential value as well as current liquid value. Worthlessness must be determined by objective standards; generally this burden is met by showing that some identifiable event occurred during the course of the year which effectively demonstrates the absence of potential value, * * *. [Citations omitted.] The unsupported opinion of the taxpayer alone that the debt is worthless will not unually be accepted as proof of worthlessness. * * * Here petitioner has pointed to no event that might have rendered the debt worthless in 1973. Although the Corporation was certainly operating at a loss in 1973, as it had been in at least the three preceding years, *321 it still produced gross income of $176,725. It continued in operation for two and one-half years after the Bank foreclosed on petitioner's certificate of deposit. Although the record is far from clear, it appears that at the end of 1973 and for a considerable time thereafter the Corporation still entertained the prospect that records it had produced might generate substantial revenues. Petitioner has not explained how gross income received by the Corporation during the period subsequent to the Bank's foreclosure on his certificate of deposit was disbursed and whether any portion of these gross revenues could have been used to pay the Corporation's debts to him. Without evidence on this point, we cannot find the debt to have been wholly worthless in 1973. Thus, we conclude that petitioner was not entitled to the $50,051 bad debt deduction he claimed in 1973. Interest Expense Deduction
The disputed interest expense deduction involves $3,501.17 claimed as interest paid on a real estate mortgage, and $1,089.77 claimed as interest paid on an automobile loan. The mortgage payments relate to a house in Southfield, Michigan, on which petitioner obtained a $52,000 mortgage as *322 of November 29, 1971, from the Bank of the Commonwealth. The mortgage was for a 25-year term with interest until maturity payable monthly at the rate of 7-1/2 percent per year. Petitioner was obligated to pay principal and interest in monthly installments of $385 beginning on January 1, 1972. Petitioner was unable to locate any canceled checks or similar evidence to show he made the monthly mortgage payments in 1973. The Bank of the Commonwealth was subpoenaed for its records relating to the mortgage, but it was unable to locate any records for the period prior to 1974. However, petitioner did provide a deed of sale showing that on March 3, 1975, he sold the house for $75,000, and that on that date the house was subject to the Bank of the Commonwealth mortgage, with principal outstanding of $49,359.44 and with interest paid to March 1, 1975. Petitioner has presented us with only minimal information from which to ascertain whether and in what amount he paid interest on the mortgage in 1973. Nevertheless, since the evidence established the initial amount of the mortgage, the monthly payments of principal and interest that petitioner was required to make, and the principal *323 amount remaining on the mortgage when the property was sold in 1975, we can arrive at an approximation of the amount paid by petitioner as interest on the mortgage during 1973. Cf. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). For the 38 months in which payments were required (i.e., January 1972 through February 1975), petitioner paid $2,640.56 on the mortgage principal. During this period the average amount of principal paid per month was $69.50. [6] Thus, of each $385 mortgage payment made by petitioner in 1973, on the average $69.50 went toward payment of the principal, while the remaining $315.50 went toward interest. If petitioner made 12 monthly mortgage payments in 1973, with each payment including $315.50 of interest, the total interest paid by petitioner in 1973 would be $3,786. On his return petitioner claimed an interest expense deduction of $3,501.17. Since this amount is less than the amount computed above, we find that petitioner was entitled to the entire $3,501.17 interest expense deduction claimed on his 1973 return. *324 With respect to the $1,089.77 automobile loan interest payment claimed by petitioner on his 1973 return, petitioner has presented no documentary evidence whatsoever to show that he took out such a loan. All that we have before us is petitioner's uncorroborated testimony concerning the purchase of a $30,000 Stutz automobile in his own name and that of a publishing company named Gold Forever. He presented no canceled checks, financing agreement, or any other evidence to corroborate his testimony. Such uncorroborated testimony is simply not sufficient to enable petitioner to carry his burden of proof, especially in view of the fact that his testimony on this issue was extremely brief and imprecise. Accordingly, on this question we hold for respondent. Decision will be entered under Rule 155.
Footnotes
1. The petition also challenged respondent's disallowance on audit of a $6,838 business operating loss deduction and a farm operating loss deduction of $7,592. However, no evidence was introduced with respect to these issues and they have not been addressed in petitioner's briefs, so we assume that petitioner has conceded these issues.↩
2. See Putnam v. Commissioner,352 U.S. 82 (1956); Benak v. Commissioner,77 T.C. 1213, 1218 (1981); sec. 1.166-8(a)(1), Income Tax Regs.↩
3. Unless otherwise indicated, all references are to the Internal Revenue Code of 1954, as amended.↩
4. The determination whether a debt arising from the payment of a guaranty should be characterized as a business or nonbusiness bad debt is based upon the facts as of the time the guaranty was initially given. Gillespie v. Commissioner,54 T.C. 1025, 1031↩ (1970), affd. per unpublished order (9th Cir. 1972). 5. That an individual was not dependent on his employment by the corporation to which he loaned money has often been relied upon in finding debts to have been of a nonbusiness character. See, e.g., Baker v. Commissioner,T.C. Memo. 1981-137↩.
6. Although the proportion of each monthly payment that went toward principal rather than interest changed each month, since the 1973 year fell in the middle of the three-year period during which petitioner made mortgage payments, it is reasonable to use this average figure in approximating mortgage interest paid in 1973.↩