JOHN C. SNEDEKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snedeker v. Commissioner
Docket No. 10529-81
United States Tax Court
T.C. Memo 1983-675; 1983 Tax Ct. Memo LEXIS 110; 47 T.C.M. (CCH) 279; T.C.M. (RIA) 83675; November 10, 1983. *110 Held: Petitioner is not entitled to an ordinary loss on stock which became worthless in 1977. The stock did not qualify as "section 1244" stock. Held,Further, Petitioner is not entitled to a deduction for the amount of the 100 percent penalties assessed against him under section 6672, I.R.C. 1954, for failure to pay over withholding and FICA taxes, paid by him in 1978. John C. Snedeker, pro se. Larry D. Anderson, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioner's 1977 and 1978 Federal income tax in the amounts of $6,216 and $1,784, respectively. After concessions, the issues for decision are (1) whether petitioner is entitled under section 1244 [1] to an ordinary loss deduction in 1977 for worthless stock, and, (2) whether petitioner is entitled to a deduction for 100 percent penalty assessments made against him under section 6672 which he paid in 1978. *113 The facts have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.[2] The stipulation of facts and attached exhibits are incorporated herein by reference. The facts required to decide the issues in this case are as follows: Petitioner John C. Snedeker, resided in Garden City, Ga. on the date the petition was filed herein. Petitioner timely filed his federal income tax returns for the taxable years 1977 and 1978 with the Internal Revenue Service Center, Chamblee, Ga.
Petitioner was employed by Grumman Aviation Corporation during 1977 and 1978 and remained so employed until the date of trial of this case. During 1970 petitioner was a principal shareholder and president of Avion International, Inc. (AII). During 1970, AII, sought protection from its creditors under Chapter XI of the Federal Bankruptcy Act. In 1971, AII's plan of reorganization was disapproved, the corporation was declared bankrupt, and ceased to exist. Its properties *114 were taken over by another investor. The Internal Revenue Service later determined that the corporation failed to pay with-holding and F.I.C.A. taxes and made a 100 percent penalty assessment under section 6672 against petitioner, which he paid. In 1973 petitioner joined with Bryan Gordan, Jr. (Gordan) and Betty Lou Coldren (Coldren) to form Avion Group, Inc. (AGI) which acquired and operated commercial real estate. Because of financial problems, mortgages on the properties were foreclosed and AGI ceased to be a viable economic entity prior to October 1975. Subsequently, 100 percent penalty assessments were made by the Internal Revenue Service against petitioner and Coldren under section 6672 as responsible officers of AGI. Payments at least in partial satisfaction of these assessments were made subsequently by petitioner and Coldren. Over various periods of time prior to October 1975, petitioner was also a principal shareholder in Avion Foundry Corp. (AFC), and Avion Leasing Co., Inc. (ALC). On March 31, 1975, AFC was liquidated and ceased conducting business. Its assets were sold and a bank loan was paid. ALC was organized by petitioner in 1971 to lease equipment. Defaults *115 by three lessees caused it to lose money and it ceased to be a viable economic entity prior to October 1975. [3]
Neither AFC, ALC, nor AGI qualified as small business corporations under section 1244. On October 31, 1975, petitioner formed a 100 percent owned holding company, Avion Companies, Inc. (Avion), which acquired his stock in AFC, ALC, and AGI for one penny per share. All other stockholders of those companies were solicited to sell their stock to Avion for $ .01 per share. Avion acquired all the shares of AFC and ALC but, Gordan did not sell his 45 percent interest in AGI. [4]
Part of the initial consideration that petitioner transferred to Avion in *116 exchange for all its stock was derived from petitioner's share of fees that were due him from a guaranty agreement executed on August 14, 1974 between himself, AGI, and Gordan in favor of Prime Media Laboratories, Inc., a New York corporation. [5] Petitioner apparently assigned $16,000 of the fees due him the guaranty agreement to Avion in partial payment for all of its stock. The $16,000 in fees has never been reported by petitioner as income on his income tax returns. *117 Avion reported no income on its tax return for fiscal year October 31, 1977, and it was completely liquidated on October 31, 1977. Petitioner deducted $23,591 as a section 1244 loss on his stock in Avion on his tax return for 1977. The claimed loss was disallowed by respondent in the notice of deficiency on the ground that the loss does not qualify as an ordinary loss within the meaning of section 1244; $16,000 of the claimed amount is now in dispute. [6]
In 1978 petitioner paid, by offsets of income, tax refunds and by cash, $4,869.53 toward satisfaction of the section 6672 100 percent penalties assessed against him. Petitioner deducted $4,579.99 of this amount on his 1978 return. Respondent disallowed this amount in its entirety. In the stipulation of facts petitioner conceded all the adjustments made in the notice of deficiency except the two discussed below. The first issue is whether petitioner is entitled to a deduction in the amount of $16,000 under section *118 1244. [7]
On brief respondent asserts that petitioner is not entitled to a section 1244 loss deduction in 1977 because: (1) Avion *119 was not a "small business corporation" when its stock was issued; (2) Avion was not "largely an operating company" as defined by section 1.1244(c)-1(e)(2), Income Tax Regs.; (3) the formation of Avion was for tax avoidance purposes and lacked economic reality; and (4) the Avion stock was not issued for money or other property as required by section 1244(c)(1)(D). We agree with respondent that petitioner is not entitled to a section 1244 loss deduction in 1977 since Avion was not a small business corporation when its stock was issued. Due to our holding, it is unnecessary to decide the other arguments raised by respondent. Section 1244 permits individuals who realize a loss on the disposition of "section 1244 stock" to treat such loss as an ordinary loss. In order for stock to be considered "section 1244 stock", the stock must among other things, be stock of a corporation that was a small business corporation. Section 1244(c)(1)(B), effective in 1977. Section 1244(c)(1)(E) [now section 1244(c)(1)(c)] establishes a gross receipts test for small business corporations to assure that the benefits of section 1244 apply only to largely operating companies as intended by Congress. *120 Davenport v. Commissioner,70 T.C. 922 (1978). Section 1.1244(c)-1(g)(2), Income Tax Regs in effect in 1977, issued pursuant to the specific authority granted in section 1244(e), provides that "ordinary loss treatment will not be available with respect to stock of a corporation which is not largely an operating company * * *." This provision of the regulation has been held to be valid and within the authority of the Commissioner by this Court. Davenport v. Commissioner,supra.
We cannot find that Avion was a largely operating company within the meaning of the regulation or was a corporation to which the benefits of section 1244 were intended to apply. Avion was a mere holding company formed to acquire the stock of AFC, ALC, and AGI, combine their assets and liabilities, and then liquidate them for the best advantage of their creditors and stockholders. In letters written to the stockholders of those companies petitioner stated: "The basic reason for the creation of the holding company is administrative simplicity, but its purchase of stock from holders who originally acquired their stock for cash will establish the basis for these holders' *121 losses for tax purposes * * *." See Perrett v. Commissioner,74 T.C. 111, 132, n. 18 (1980), affd without published opinion 679 F.2d 900 (9th Cir. 1982); Benak v. Commissioner,77 T.C. 1213, 1219-1220 (1981). There is no evidence that Avion conducted any business at all. On its tax return for fiscal 1976 it reported gross receipts of $8,342 with no explanation of the source thereof. We can only assume that this was rent from a piece of equipment that Avion owned which would be characterized as passive income. The deductions claimed did not exceed the gross income reported so Avion did not meet the requirements of section 1244(c)(1)(E) of the Code for 1976 in any event. See Davenport v. Commissioner,supra;Prusak v. Commissioner,T.C. Memo 1979-112. On its return for fiscal 1977 Avion reported no gross receipts or income. It was not an operating company during 1977. For the above, and other reasons, we conclude that the stock of Avion did not qualify as section 1244 stock and petitioner is not entitled to deduct his loss thereon, if any, as an ordinary loss under section 1244. The second *122 issue is whether petitioner is entitled to a deduction for amounts paid on 100 percent penalty assessments imposed against him under section 6672 for failure to pay over withholding and F.I.C.A. taxes. Respondent asserts that petitioner is not entitled to the deduction since the amount was a penalty paid to the government for the violation of a law. We agree with respondent. Section 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. However, section 162(f) provides that no deduction shall be allowed for ay fine or similar penalty paid to a government for the violation of any law. In Patton v. Commissioner,71 T.C. 389 (1978), we held that the penalty imposed by section 6672 is clearly a penalty for purposes of section 162(f), and, therefore, not deductible. See also Medeiros v. Commissioner,77 T.C. 1255 (1981); Smith v. Commissioner,34 T.C. 1100 (1960), affd. per curiam 394 F.2d 957 (5th Cir. 1961). Accordingly, we hold that petitioner is not entitled to the deduction. [8]
*123 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable years in issue, 1977 and 1978.↩
2. This case was originally before the Court on respondent's motion for summary judgment. At the hearing for such motion, the parties agreed that this case should be fully stipulated for decision.↩
3. The loss suffered by petitioners upon the AFC, ALC, and AGI stock's becoming worthless was deducted by petitioners in the years such stock became worthless, or was correctly carried over to 1977 and 1978 by respondent.↩
4. The plan of reorganization for Avion stated that "the basic reason for the creation of the holding company is administrative simplicity but its purchase of stock from holders who originally acquired their stock for cash will establish the basis for these holders' losses for tax purposes."↩
5. The purpose of the guaranty was to ensure that Prime Media has enough funding to acquire all the stock of TVC Laboratories as a step in a proposed merger. The compensation to be paid to petitioner, AGE and Gordan for acting as guarantors consisted of an initial fee of $16,000 and a continuing commitment fee of 1-1/4 percent per annum of the principal amount of the notes guaranteed, to be paid to Gordan, Trustee for the guarantors, and which was to be held in an escrow account by attorney, Neil Doherty. Under the guaranty agreement, receipt of the fees was contingent upon a successful merger of Prime Media and TVC Laboratories. Between September 27, 1974 and March 1978, a total of $38,532.58 in guarantors fees was paid to Gordan, as Trustee. The record does not disclose whether, when, and to whom these funds were disbursed by either Gordan or Doherty.↩
6. The balance of the $23,591 consisted of $4,000 for a piece of equipment, which petitioner has conceded, and $3,591 of unreimbursed expenses which respondent concedes may be deducted as a bad debt.↩
7. Petitioner was not represented by counsel and did not file a brief. When this case was called for trial, respondent orally agreed that unreimbursed expenses incurred by petitioner in behalf of the Avion companies were deductible by petitioner as a bad debt. This should be included in the Rule 155 computation. Respondent offered evidence, and petitioner agreed, that a subchapter S election under section 1372 of the Code in effect in 1977 had not been filed by Avion. This is irrelevant in this case. See Harwell v. Commissioner,T.C. Memo. 1974-153. Petitioner also made some concessions orally that might lose this issue for his is given effect, but we have not taken those into consideration in reaching our conclusion. The parties have not discussed whether petitioner is entitled to a capital loss on his Avion stock in 1977. There is no specific evidence establishing petitioner's basis in the Avion stock, but since respondent did not raise this as an issue prior to the time the case was submitted, we will not go into it.↩
8. Petitioner also asserts that the corporations actually paid over the taxes in question and that he is therefore entitled to a refund for such amount. However, as we informed petitioner at trial, we do not have jurisdiction to order an overpayment of the amounts petitioner paid over. See sections 7442, 6214(a), and 6512.↩