JAMES J. BAGGAO AND NORMA T. BAGGAO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
BAGGAO v. COMMISSIONER
Docket No. 8154-90
United States Tax Court
T.C. Memo 1992-225; 1992 Tax Ct. Memo LEXIS 267; 63 T.C.M. (CCH) 2778; April 16, 1992, Filed *267 Decision will be entered under Rule 155. Thomas E. Crowe, for petitioners. Fred E. Green, Jr., for respondent. NIMS
NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: This case was heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) of the Code. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: In her notice of deficiency dated January 25, 1990, respondent determined deficiencies in petitioners' 1982 and 1983 Federal income taxes in the amounts of $ 14,885 and $ 9,543, respectively. Respondent also determined that petitioners are liable for the addition to tax under section 6661 for taxable year *268 1982 in the amount of $ 3,721. Prior to trial, the parties resolved several issues. The issues remaining for decision are (1) whether petitioners are entitled to a bad debt deduction in the amount of $ 22,000 in taxable year 1982; and (2) whether petitioners are liable for the addition to tax for substantial understatement of tax liability pursuant to section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife and resided at Henderson, Nevada, at the time of filing the petition herein. Prior to the tax years in question, petitioners were the owners and operators of the Sun and Sand Motel (motel) in Las Vegas, Nevada. Petitioners owned the motel from 1975 until 1979 when they sold it. Upon the sale of the motel, petitioners received two promissory notes totaling $ 1,480,000 (motel notes) which were secured by deeds of trust. Petitioners intended to utilize the interest income received on the motel notes as their primary source of income. After the sale of the motel and after some investigation, in June 1980, petitioners purchased a hotel in Odessa, Texas, known as the Inn of the Golden West (hotel). Petitioners *269 decided to purchase this hotel because it had a good reputation and, at the time, the City of Odessa had plans to build a convention center nearby its downtown location. Petitioners paid $ 400,000 in cash and gave a $ 1,900,000 note to the seller. Petitioners also agreed to invest an additional $ 150,000 for repairs and improvements to be made to the hotel. Petitioners were required to obtain a $ 150,000 letter of credit to guarantee that they would make the required repairs and improvements. The letter of credit was secured by the motel notes. Petitioners did not receive income from the motel notes while they were encumbered by the letter of credit. [2] The purchase and sale agreement provided that petitioners had to complete the required improvements to obtain release of the encumbrance on the motel notes. *270 Shortly after purchasing the hotel, petitioners formed Golden West Enterprises, Inc. (Golden West), and transferred the hotel to it. Petitioners were the sole shareholders and officers of Golden West. They operated the hotel for Golden West and were paid salaries by the corporation. The motel notes were not contributed to Golden West. Plans for the Odessa convention center did not materialize. The City determined to build the convention center at a location closer to the airport and not downtown. Because of this, and also because of general financial conditions, the hotel was not successful. Golden West made significant reductions in its staff but, nevertheless, it was unable to make payments on the outstanding mortgage. [3]Golden West was threatened with foreclosure of the hotel property. In December 1981, Golden West filed a petition in bankruptcy under chapter 11 of the Bankruptcy Code. Golden West *271 sought to stave off foreclosure of the property so that it could arrange for the orderly sale of assets. Golden West retained Wylie James (James) as counsel for the proceeding. On December 31, 1981, petitioners paid $ 22,000 to James on behalf of Golden West. Petitioners intended the payment as a loan to Golden West. They expected to be repaid in the bankruptcy liquidation. During the course of the bankruptcy proceeding, the seller of the hotel commenced an action against petitioners to enforce the letter of credit. This proceeding was conducted outside of Golden West's bankruptcy proceeding. The seller alleged that petitioners did not spend $ 150,000 on hotel improvements as required by the purchase and sale agreement. Petitioners defended against this claim and successfully established that they had expended the required amounts on hotel improvements. Based on this ruling, petitioners were able to obtain an order from the bankruptcy court releasing the letter of credit as an encumbrance on the motel notes. Following the release, petitioners once again received payments on the motel notes from the obligors. A plan for reorganization for Golden West was confirmed by the *272 bankruptcy court on July 28, 1982. After approval of the bankruptcy court was obtained, the hotel was sold and the proceeds were used to pay creditors. [4] However, the plan did not provide for repayment of Golden West's debt to petitioners. Petitioners were not reimbursed for any portion of the $ 22,000 they advanced to James on behalf of Golden West. Petitioners received a note representing a portion of their initial $ 400,000 cash investment, although the obligor on the note later defaulted. On their 1982 joint Federal income tax return, petitioners reported $ 5,400 wage and salary income received by petitioner Norma Baggao from Golden West, and interest income (presumably from the motel notes) in the amount of $ 138,766. On a Schedule C for Sun and Sand Motel, petitioners deducted $ 22,000 as a bad debt from sales. Respondent determined *273 that petitioners were not entitled to claim a $ 22,000 bad debt deduction. Respondent further determined that petitioners were liable for the addition to tax under section 6661 for substantial understatement of income tax, and that the addition was applicable to the disallowed Schedule C bad debt deduction. The issue we must decide here is the nature of the $ 22,000 payment to James made by petitioners. Petitioners make the following arguments in the alternative: (1) That the $ 22,000 should be allowed as a business bad debt deduction upon its becoming worthless in 1982; (2) That the $ 22,000 should be allowed as a deduction under section 162 (relating to deductions for trade or business expenses); (3) That the $ 22,000 should be allowed as a deduction under section 212 relating to ordinary and necessary expenses for the preservation of income; and (4) If a deduction is proper, but is disallowed for taxable year 1982, the deduction should be allowed for taxable year 1981 under section 1311. We are satisfied that petitioners' payment to James in connection with Golden West's bankruptcy proceeding was intended as a loan to Golden West. The payment was not made by petitioners *274 in the hope that it would enable Golden West to continue operations and possibly be successful. Rather, the payment was intended to facilitate Golden West's bankruptcy filing. Petitioners believed that the proceeds of the sale of the hotel would be sufficient to pay outstanding creditors and that they would be reimbursed for the $ 22,000 advance. Consequently, the fact that Golden West was facing bankruptcy is not necessarily determinative of the character of the payment given other considerations. See Eckert v. Burnet, 283 U.S. 140, 141 (1931); A. R. Lantz Co. v. United States, 424 F.2d 1330, 1333 (9th Cir. 1970); O.H. Kruse Grain & Milling v. Commissioner, 279 F.2d 123, 125, 126 (9th Cir. 1960), affg. T.C. Memo. 1959-110; Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1978). Accordingly, if the payment is deductible to petitioners at all, it would be deductible as a bad debt. [5] The debt became worthless in 1982 following court approval of the reorganization plan which did not include repayment of the debt to petitioners. Respondent seems to agree that the expenditure was *275 a loan to Golden West, but argues that the debt is a nonbusiness bad debt. Section 166 allows as a deduction any debt which becomes worthless during the taxable year. Sec. 166(a)(1). However, a nonbusiness bad debt must be claimed as a short-term capital loss. Sec. 166(d)(1)(B). A nonbusiness bad debt is defined as a debt other than one created or acquired in connection with a trade or business of the taxpayer or the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Sec. 166(d)(2). *276 Whether a particular loss is incurred in a taxpayer's trade or business is a question of fact in each particular case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941); Lundgren v. Commissioner, 376 F.2d 623, 627 (9th Cir. 1967), revg. T.C. Memo. 1965-314; Smith v. Commissioner, 60 T.C. 316, 318 (1973). In determining whether a worthless debt is a business or nonbusiness bad debt, attention is focused on the relationship the loss bears to the taxpayer's trade or business. Sec. 1.166-5, Income Tax Regs. For petitioners to be entitled to deduct the entire $ 22,000 from income in 1982, they must show that their dominant motive for making the loan to Golden West was to further their trade or business, not to protect their investment in Golden West. The proper measure of a proximate relationship between the debt and the taxpayers' trade or business is that of dominant motivation. United States v. Generes, 405 U.S. 93, 103 (1972); Benak v. Commissioner, 77 T.C. 1213, 1216 (1981). The business of a corporation is not the business of its shareholders. Whipple v. Commissioner, 373 U.S. 193, 202 (1963); *277 Leamy v. Commissioner, 85 T.C. 798, 809 (1985). Care must be taken to distinguish bad debt losses arising from the business of the taxpayer from those "actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business." Whipple v. Commissioner, 373 U.S. at 202. Devoting one's time and energies to the affairs of a corporation is not by itself a trade or business of the person so engaged. Whipple v. Commissioner, 373 U.S. at 203. Petitioners were both the organizers and sole shareholders of Golden West, as well as its employees. "These interests are not the same, and their differences occasion different tax consequences." United States v. Generes, 405 U.S. at 100. The dominant motivation of petitioners in making the payment to James on behalf of Golden West was to protect their investment in Golden West. [6] The purpose of the loan (retainer of bankruptcy counsel) was not to reorganize Golden West's business for continued operations, but was to slow down the foreclosure process so that a sale of the assets (the hotel, primarily) could *278 be arranged in an orderly manner. Petitioner James Baggao testified that he hoped to recoup his investment in the hotel from the sale proceeds. These are intentions of petitioners as investors in Golden West. Consequently, the worthless debt is a nonbusiness bad debt and must be treated accordingly. Respondent also *279 determined that petitioners are liable for the addition to tax for substantial understatement of liability pursuant to section 6661. Section 6661 provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 501 (1988). "Substantial understatement" is defined as an understatement which exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1). "Understatement" is defined as the amount of the tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return. Sec. 6661(b)(2)(A). The amount of understatement may be reduced if there is substantial authority for the taxpayer's treatment of an item or if the taxpayer discloses adequate facts with respect to the treatment on his return or an attachment thereto. Sec. 6661(b)(2)(B). Petitioners argue that they had substantial authority for their treatment of the loss or, in the alternative, that they *280 adequately disclosed the item on their return. We have described the "substantial authority" requirement as follows: In evaluating whether a taxpayer's position regarding treatment of a particular item is supported by substantial authority, the weight of authorities in support of the taxpayer's position must be substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6661-3(b)(1), Income Tax Regs. The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter than a reasonable basis standard (the standard which, in general, prevents imposition of the section 6653(a) negligence addition). Sec. 1.6661-3(a)(2), Income Tax Regs.
Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Sec. 1.6661-3(b)(2), Income Tax Regs., lists the authorities which are considered in making this determination. It is clear from the regulation "that substantial authority here refers to legal precedents which would support the taxpayer's application of the law to a given fact *281 or set of facts." Antonides v. Commissioner, 91 T.C. at 702. We have reviewed cases cited by petitioners in their trial memorandum and find them to be distinguishable from the case at hand. Consequently, the cases do not provide substantial authority for their position. Antonides v. Commissioner, 91 T.C. at 703-704; sec. 1.6661-3(b)(3), Income Tax Regs.
We also find that petitioners did not disclose on their return or on an attachment thereto adequate facts with respect to the treatment of the item. Sec. 6661(b)(2)(B)(ii). Regulations under section 6661 prescribe the circumstances in which information provided on the return will be adequate disclosure for purposes of section 6661. Schirmer v. Commissioner, 89 T.C. 277, 285 (1987); see sec. 1.6661-4(b) and (c), Income Tax Regs. A review of these authorities makes it clear that there was not sufficient disclosure in this case. Petitioners reflected the $ 22,000 as a bad debt from sales on a Schedule C with the heading "Sun and Surf Motel". They did not provide additional explanation. For the reasons set forth herein, respondent's determination with respect to the *282 addition to tax under section 6661 will be sustained. To reflect the foregoing and concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. This case was assigned pursuant to sec. 7443A and Rules 180, 181, and 183. All section references are to the Internal Revenue Code and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The record is not clear as to why petitioners agreed to encumber the Motel notes (face value of $ 1,480,000) and the income thereon (approx. $ 140,000 annually) to secure the obligation to expend $ 150,000 in repairs and improvements on the hotel.↩
3. The record is not clear at which point Golden West assumed the primary mortgage on the hotel property.↩
4. Documents relating to the sale of the hotel to the subsequent purchaser indicate that the purchaser assumed the balance of the $ 1,900,000 mortgage on the hotel property.↩
5. As the Supreme Court noted in Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 187-188 (1934), a loss attributable to a bad debt must be regarded as a bad debt loss, deductible as such or not at all. See Putnam v. Commissioner, 352 U.S. 82, 88 (1956); Horne v. Commissioner, 523 F.2d 1363, 1366 (9th Cir. 1975), affg. 59 T.C. 319 (1972); United States v. Keeler, 308 F.2d 424, 432↩ (9th Cir. 1962).
6. The record does not contain sufficient information to support a finding that petitioners were in the trade or business of investing in hotel properties for later sale. Although petitioners did own and sell a hotel (the motel) prior to their purchase of the hotel at Odessa, that fact does not establish a pattern of purchasing and selling hotel property as a trade or business. Whipple v. Commissioner, 373 U.S. 193, 202-203 (1963); Guardian Industries Corp. v. Commissioner, 97 T.C. 308, 320, 326 (1991); Bramblett v. Commissioner, T.C. Memo. 1990-296↩. Further, petitioners indicated that they intended to retire after the sale of the motel.